IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| SELAMAWIT TEKA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:21CV00030 |
| ) | |
| ) | **TRIAL BY JURY** |
| JONATHAN JACK ) | **IS DEMANDED** |
| ) | |
| Defendant. ) | |
| ) | |

# COMPLAINT

Plaintiff, Selamawit Teka ("Plaintiff" or "Teka"), by counsel, files the following Complaint against defendant, Jonathan Jack ("Defendant" or "Jack").

Plaintiff seeks (a) compensatory damages and punitive damages in the sum of **$2,350,000.00**, (b) prejudgment interest on the principal sum awarded by the Jury from July 10, 2021 until the date Judgment is entered pursuant to § 8.01-382 of the Virginia Code (1950), as amended (the "Code"), and (c) costs incurred – arising out of Defendant's false light invasion of privacy, intrusion upon seclusion and public disclosure of private facts, defamation, insulting words and conversion.

## I. INTRODUCTION

1. This disturbing case presents an egregious betrayal of trust and multiple intentional privacy violations and acts of defamation. Beginning on July 10, 2021, Jack engaged in a course of unlawful and unauthorized contact with Teka's employer, wherein he publicized and exposed personal details of Teka's private life to those she works for

1

without cause, reason or justification. In these communications, Jack publicized and exposed the contents of private social media conversations, and other details of Teka's personal life, dealings, conversations and activity, to those with no legitimate interest or concern in her private affairs. Jack defamed Teka and violated her right to privacy with the intent to insult, humiliate and embarrass Teka, and get her fired.

2. Teka brings this action to recover money damages for the harm caused by Jack's actions.

## II. JURISDICTION AND VENUE

3. The United States District Court for the Western District of Virginia has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The parties are citizens of different States, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4. Jack lives and works in the Western District of Virginia. He is at home in Virginia, and subject to the Court's personal jurisdiction.

5. Venue is proper in the Charlottesville Division of the United States District Court for the Western District of Virginia pursuant to Title 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2).

## III. PARTIES

6. Teka is a citizen of Maryland. She lives in Hyattsville, Maryland. She has a Bachelor Degree in Sociology and a Master's Degree. She works for the District of Columbia Health Benefit Exchange Authority ("HBX") as a Member Services Manager. She has been with HBX for over seven (7) years with an exceptional track record of success serving the District's residents and managing employees. Teka manages a team

of about 8/9 full time employees. She is very respected by her leadership and team members at work. After a very long road of building her career, she is proud to say that she now earns a salary that allows her and her children to live comfortably. Until Jack published the false statements about her and invaded her privacy, Teka enjoyed an untarnished reputation in the community in which she lives and works.

7. Jack is a citizen of Virginia. He lives in Ruckersville, Virginia, and works in Charlottesville, Virginia. Previously, Jack worked briefly for NGIC in Charlottesville before he was let go. Jack has a history of sending insulting messages to women (recently to an Airbnb host). He also has a history of sending employer's emails when he fights with people (he sent an email to his brother's employer). Jack's conduct in this case was malicious and spiteful.

IV. **STATEMENT OF THE FACTS**

8. Teka dated Jack for about two months from the beginning of May 2021 to mid-July 2021. She learned that he had some anger issues, but she had no idea he was unstable. Prior to the afternoon of Thursday, July 8, 2021, Teka did not have any arguments or concerns about Jack.

9. On July 8, 2021, Teka asked Jack to refrain from talking about politics and race in front of her children. She also suggested to Jack that he needed to work on improving his relationship with people. Unbeknownst to Teka at the time, her comments caused Jack to unravel emotionally.

10. Between July 8, 2021 and July 10, 2021, Jack sent Teka numerous text messages and direct messages through WhatsApp that were insulting, vulgar, vile and nasty. For example, after Teka went to bed on July 8, she received 26 messages from

Jack, including pictures and videos of him chatting with women. Jack sent Teka countless egregious and insulting text messages. In one message he stated, "I can't wait for your daughters to get impregnated by a teenager". Jack called Teka "third world trash", a "C*nt", "Dumb Bitch", an "insect". He told Teka that he could not wait to have two women over to his "Cville bedroom" for a "[t]hreesome". After sending the insulting messages, Jack would block Teka, so she could not respond. He then unblocked Teka, and sent further insulting and nasty text messages. In an attempt to address and mitigate the situation, Teka used three of her personal numbers to message Jack back, as he kept blocking and unblocking her numbers.

11. On Friday, July 9, 2021, Teka traveled to Ruckersville after work to see Jack, to try and make peace, and to retrieve her personal belongings, including a handmade Ethiopian blanket, camera stand, two sun hats, a food bag and containers and other personal property, located at his house. Teka got to Jack's house around 4:00 p.m., and rang the doorbell once. When she arrived at Jack's home, Teka saw Jack erratically racing around in his house, which made her scared for her safety as Teka knew that Jack owned firearms. Jack refused to return Teka's belongings. Teka left the area within minutes of arriving without incident of any kind.

12. On Saturday, July 10, 2021, Teka sent Jack a message via WhatsApp with attachments of a complaint from an Airbnb host and new information Teka had located about Jack's fight with another Airbnb host and his loss of access to Airbnb due to his offensive text messages and behavior. The Airbnb host's review of Jack frightened Teka:



In her message, Teka told Jack that she would not be texting him again. She wished him well, and blocked his number from all of her accounts.

13. That night, Teka got an email from Jack that advised Teka to "cease and desist – stop texting me". Teka had already blocked Jack. Teka did not reply.

14. About one-half hour later, Teka received an email from Jack addressed to Dr. Linda Wharton-Boyd – Communication Director, HBX. Prior to sending the email, Jack looked up the names of HBX leadership and sent the email to Dr. Boyd, asking her to pass the information to Mila Kofman, Executive Director of HBX. Jack clearly intended to interfere with Teka's employment. His email was entirely premeditated. Jack copied Teka on the email:

> **Harassment of Taxpayer - Selamawit Teka**  Inbox ×
>
> **JONATHAN JACK** <jonjack89@yahoo.com>
> to linda.wharton-boyd, me
>
> Please pass this information on to Mila Kofman.
>
> One of your employees, Selamawit Teka, used her DC government procured cell phone to send me harassing messages.
>
> I've asked her repeatedly to cease and desist, however, she has not.
>
> Is this type of behavior deemed acceptable from an employe within your office?
>
> Please advise.
>
> Thank you.
>
> Jonathan Jack
> 571-344-8215

15.     Jack's email was materially false. First, Teka did not "[h]arrass" Jack, as the subject matter headline stated or implied. Second, Teka did not send Jack any "harassing messages". Third, Teka did not use her DC Government cell phone to send Jack any harassing or unpleasant messages. The only time she ever sent Jack a message (one text message) from her DC Government cell phone was on June 10, 2021, letting Jack know that her personal phone had crashed and she would not be able to text him at that moment. That kind of text message is allowed by Teka's employer. Finally, Jack insinuated that Teka's "behavior" was unacceptable for "an employee within your office". Jack misrepresented that he had asked Teka "repeatedly to cease and desist". His false statements were intended to imply that Teka was stalking him and to insinuate that Teka was not fit to work for HBX.

16.     Teka responded to her employer apologizing for Jack's email and asking her employer to disregard as this was a personal matter. Teka reassured her employer that the information was false and that she would deal with the matter in court and directly with Jack. Jack was copied in Teka's email response.

6

17. On Sunday, July 11, 2021, Teka and her children boarded a plane for Ethiopia to see Teka's mother, family and friends whom she had not seen in years. Jack's email to Dr. Boyd troubled Teka all night. At 7:20 a.m., she emailed Dr. Boyd to inform Dr. Boyd about some "minor" details concerning her relationship and communications with Jack that Teka thought might be helpful in her absence.

18. On July 11, 2021, after seeing Teka's response and knowing that Teka was on a flight to Ethiopia, Jack sent another email to Teka's employer with more false accusations and this time screenshots of private communications between Teka and Jack. Jack's email was intended to portray Teka in a false light:

> I want nothing to do wit this person, Ms. Selamawit Teka. All I want is her to STOP harassing me.
>
> I have explained to her multiple times to leave me alone.
>
> On 7/9/21 she drove to my home in Charlottesville, VA, from Hyattsville, MD with zero warning and completely uninvited.
>
> She rung my doorbell multiple times, even though I have a "NO TRESPASSING" sign at the beginning of my property.
>
> Her vehicle blocked my driveway.
>
> I was unable to pick up my Daughter from school on time that day because of this unhinged behavior.
>
> Selamawit Teka has used FOUR total numbers to harass me. I've included screenshots.
>
> One in particular in which Ms. Selamawit Teka stated "Lol. You know you can generate as many numbers as you want right?! And delete after pass your messages across. So you're holding onto some online one time numbers in your block list hehe. So blocking is really nothing".
>
> This last message was the final straw and the reason I felt forced to contact you. At this point I fear for not only my safety but for my Daughter's safety.
>
> Please advise and thank you.

Jack's July 11 email falsely stated or implied Teka had travelled to Virginia during work hours on July 9, 2021, that she had trespassed on Jack's property, and that she had engaged in "unhinged" behavior while there. Jack further falsely claimed that Teka's actions put him in "fear for not only my safety but for my daughter's safety." Jack never reported Teka's behavior to law enforcement or anyone else because he did not fear for his safety. Additionally, Jack's daughter, Joce, does not live even with him and was not at the house when Teka was there on July 9, 2021. Jack fabricated the false statements.

7

19. Significantly, attached to Jack's July 11, 2021 email to Teka's employer were screenshots of private communications Teka had had with Jack.[1] Jack knew that Teka was a very private and conservative person. He knew that Teka did not have any work colleagues as friends on Facebook or any other social media and that Teka liked to keep her relationships with co-workers very professional. Jack knew the reason Teka used a pseudonym on Facebook, rather than her real name, was because Teka did not want her colleagues sending friend requests. Jack intentionally exposed to Teka's employer extracts of text messages that portrayed Teka in a false light. One private message stated, "I hate I spent too much on lingerie lol I'll use them in the future haha". The message further stated, "Do you know those girls from porn sites the pictures I saw don't look like they'll understand and match your complex behavior and needs. Yeah they look smart baby. One is 24. You like '3rd world, trash' haha. Go for it. And who takes pictures of themselves FaceTiming with prostitutes". Another private message reads. "Next time she visited I put a mattress cover". The screenshots were very personal and embarrassing to Teka. They were never intended to be publicized to anyone. The excerpts portrayed Teka as someone she is not. The text about "lingerie" and pictures from "porn sites" referred to pictures and video that Jack had sent Teka, where Jack was chatting with women on dating/porn sites. By only disclosing a screenshot of the text message communication, Jack intended to cause Teka's employer to think that Teka frequented these sites looking at pictures of "women", and that she advocated prostitution

---

[1] One of the screenshots included messages Jack had sent to Teka *after* Teka had blocked Jack. The fake messages exposed Teka's personal (Google) telephone numbers. The messages read, "I will report you", "Please stop stalking me and harassing me", and "This is the 3rd or 4th account that you have created to harass me". The messages were wholly fabricated by Jack to make it appear to HBX that Teka was stalking and harassing Jack.

("Go for it"). The email and screenshots published to Teka's employer made Teka look like she has no boundaries, that she lacks good judgment, that she is sexually promiscuous, morally and ethically compromised, and mentally unstable.

20. When Teka saw Jack's email on July 10, 2021, she was shocked and dismayed. She knew that she would not have the opportunity to go to the office and discuss the matter with her employer, as she was getting ready to get on an airplane for Ethiopia the next day. She was anxious and fearful about how Jack's email would be received by her employer. On the flight, Teka saw Jack's second email to HBX. She was completely shocked by the fact that very personal and very private text messages were being exposed to HBX. She cried uncontrollably on the plane. This put her children under a lot of stress. Since the fight with Jack started on July 8, 2021 due to the fact that Teka's children did not like some of his racial and inappropriate political comments, Teka's children felt bad thinking they had caused the fight. Teka did not see her family in Ethiopia for a couple of days after she arrived because of the turmoil caused by Jack's emails to HBX. Teka felt so much shame, stress and anxiety that she did not want to see family and friends in Ethiopia. She lost sleep. Her anxiety level increased each day to the point that she contacted a psychiatrist at Kaiser to discuss her situation and talk about anxiety medication. She had to take daily medication throughout her stay in Ethiopia. To this day, she wakes up with panic attacks in the middle of the night. She has nightmares about being "canceled", losing her job and not being able to pay the bills and raise her kids. Teka's vacation and the quality of time that she spent with her children and family suffered greatly. She waited to see her family for 3 years, spent $4,000 on tickets, $1,500 on accommodations, and $2,000 on other expenses. All this

went to waste because of the mental anguish Jack's actions caused. Teka remains humiliated and very embarrassed. She does not know how to face her employer and her leadership after her privacy was exposed. Teka is a very traditional and very private person. She fears that her leadership at HBX will no longer trust that she can be a good example of a leader moving forward; that they will see Teka through a different lens; that they have a different opinion of her; and that they will not want to associate with Teka. It is still unclear whether Jack's actions have affected Teka's employment and if there will be any investigations and what will come out of it. This causes added emotional distress while Teka is at home recovering from COVID. Dr. Boyd reached out to Teka by telephone upon Teka's return to the United States. Though she has been understanding, Dr. Boyd has encouraged Teka a few times to talk to HR. The fact that Dr. Boyd knows Teka's private affairs is embarrassing and humiliating enough, but her suggestion to talk to HR is causing Teka another stress, since she does not want to talk to anyone at all about these private matters. Perhaps most important, Teka is intimidated and ashamed around her children because of Jack's actions. She feels like she has not lived up to her own advice about choosing and associating with the right people, taking one's time and not rushing into relationships.

## COUNT I – FALSE LIGHT INVASION OF PRIVACY

21. Teka restates paragraphs 1 through 20 of this Complaint, and incorporates them herein by reference.

22. By publishing the emails and screenshots to HBX, Jack generated substantial publicity about the false statements of or concerning Teka. Jack falsely ascribed to Teka actions she never engaged in and statements that she never made –

conduct and statements that portrayed Teka as being unstable, untrustworthy, immoral and lacking in good judgment. Jack placed Teka in a false light that would be offensive to any reasonable person.

23. Jack had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Teka would be placed by the false statements.

24. Jack's actions constitute a false light invasion of Teka's privacy under the common law of Maryland and/or the District of Columbia.

25. As a direct result of Jack's false light invasion of privacy, Teka suffered presumed damages and actual damages, including, but not limited to, insult, pain, embarrassment, humiliation, anxiety, mental suffering, injury to her reputation, diminished future earning capacity and other special damages, costs, and out-of-pocket expenses, in the sum of $2,000,000 or such greater amount as is determined by the Jury. As a result of Jack's willful, wanton, and malicious conduct in placing Teka in a false light, Teka is entitled to punitive damages in the sum of $350,000, or the maximum amount allowed by applicable law.

## COUNT II – INTRUSION UPON SECLUSION

26. Teka restates paragraphs 1 through 25 of this Complaint, and incorporates them herein by reference.

27. Jack intentionally intruded upon the seclusion of Teka and her private affairs or concerns, and disclosed private and confidential personal information, without consent, to third-parties.

28. Under the circumstances, disclosure of Teka's confidential information is and would be offensive to any reasonable person.

29. As a direct result of Jack's intrusion upon seclusion and public disclosure of private facts, Teka suffered presumed damages and actual damages, including, but not limited to, insult, pain, embarrassment, humiliation, anxiety, mental suffering, injury to her reputation, diminished future earning capacity and other special damages, costs, and out-of-pocket expenses, in the sum of $2,000,000 or such greater amount as is determined by the Jury. As a result of Jack's willful, wanton, and malicious conduct in disclosing private facts, Teka is entitled to punitive damages in the sum of $350,000, or the maximum amount allowed by applicable law.

## COUNT III – **DEFAMATION**

30. Teka restates paragraphs 1 through 29 of this Complaint, and incorporates them herein by reference.

31. Jack made and published to HBX false factual statements of and concerning Teka that conveyed a defamatory meaning. These statements are detailed verbatim above. Jack's false and defamatory statements were published and republished without privilege, justification or legal excuse of any kind. The false and defamatory statements were not published in good faith or through misinformation or mistake. Jack published the words intentionally to harm Teka's business and reputation.

32. Jack's statements were materially false.

33. Jack's false statements constitute defamation. The statements held Teka up to public ridicule, scorn, contempt and humiliation, and imputed to her an unfitness to perform the duties of an office or employment for profit, or the want of integrity in the

discharge of the duties of such office or employment. Jack's false statements also prejudiced Teka in her profession and business.

34. Jack directed the false and defamatory statements at Teka with the specific intent to harm Teka's reputation. Jack acted negligently in publishing the false statements. He lacked reasonable grounds for any belief in the truth of his statements. Jack's false statements caused Teka to suffer and incur both presumed and actual damages, including insult, pain, embarrassment, humiliation, mental suffering, harm to name and reputation, and other actual damages.

35. Jack made the false statements with actual or constructive knowledge that they were false or with reckless disregard for whether they were false. He acted with actual malice and reckless disregard for the truth for the following reasons:

    a. He manufactured the false statements out of whole cloth and published the emails to HBX knowing the statements were false out of a clear desire to hurt Teka. Jack exhibited an extreme bias, ill-will and a desire to hurt Teka through the publication of the scandalous statements. Jack acted in bad faith upon a total absence of evidence. He could not have had an honest belief in the truth of his statements and insinuations about Teka.

    b. Jack repeated, reiterated and excessively republished the false and defamatory statements out of a desire to injure Teka and destroy her reputation.

36. As a direct result of Jack's defamation, Teka suffered presumed damages and actual damages, including, but not limited to, insult, pain, embarrassment, humiliation, anxiety, mental suffering, injury to her reputation, diminished future earning capacity and other special damages, costs, and out-of-pocket expenses, in the sum of

$2,000,000 or such greater amount as is determined by the Jury. As a result of Jack's willful, wanton, and malicious conduct, Teka is entitled to punitive damages in the sum of $350,000, or the maximum amount allowed by applicable law.

## COUNT IV – INSULTING WORDS

37. Teka restates paragraphs 1 through 36 of this Complaint, and incorporates them herein by reference.

38. Jack's insulting words, in the context and under the circumstances in which they were published, written and used, tend to violence and breach of the peace. Like any reasonable person, Teka was humiliated, disgusted, angered and provoked to violence by the insulting words.

39. Jack's false, libelous and slanderous words are fighting words, which are actionable under § 8.01-45 of the Code.

40. As a direct result of Jack's insulting words, Teka suffered presumed damages and actual damages, including, but not limited to, insult, pain, embarrassment, humiliation, anxiety, mental suffering, injury to her reputation, diminished future earning capacity and other special damages, costs, and out-of-pocket expenses, in the sum of $2,000,000 or such greater amount as is determined by the Jury. As a result of Jack's willful, wanton, and malicious conduct, Teka is entitled to punitive damages in the sum of $350,000, or the maximum amount allowed by applicable law.

## COUNT IV – CONVERSION

41. Teka restates paragraphs 1 through 40 of this Complaint, and incorporates them herein by reference.

42. At all times relevant to this action, Teka had a clear, definite, undisputed and obvious property right of possession in and to her personal property identified above, to which she was entitled to immediate possession.

43. Jack wrongfully exercised and assumed authority over Teka's tangible personal property, depriving Teka of possession. Jack wrongfully exerted dominion over property in which Teka has an interest in denial of and inconsistent with Teka's rights and interests.

44. Jack's actions constitute the tort of conversion.

45. Jack knowingly and willfully converted Teka's property, and has acted under circumstances amounting to a willful and wanton disregard of Teka's rights and interests.

46. As a direct result of Jack's conversion, Teka suffered damage and incurred loss, including, but not limited to, loss of property, actual damages, attorney's fees, court costs, and other out-of-pocket expenses and damages in the sum of $25,000.00 or such greater amount as is determined by the Jury.

Teka alleges the foregoing based upon personal knowledge, public statements of others, and records in her possession. Teka believes that substantial additional evidentiary support, which is in the exclusive possession of Jack and his agents and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

Teka reserves her right to amend this Complaint upon discovery of additional instances of Jack's wrongdoing.

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Selamawit Teka, respectfully requests the Court to enter Judgment against Defendant, Jonathan Jack, as follows:

    A.    Compensatory damages in the amount of $2,000,000.00 or such greater amount as is determined by the Jury;

    B.    Punitive damages in the amount of $350,000.00 or the maximum amount allowed by law;

    C.    Prejudgment interest from July 10, 2021 until the date Judgment is entered at the maximum rate allowed by law;

    D.    Postjudgment interest at the maximum rate allowed by law;

    E.    Costs and such other relief as is just and proper.

## TRIAL BY JURY IS DEMANDED

DATED:    August 16, 2021

SELAMAWIT TEKA

By:   */s/ Steven S. Biss*
    Steven S. Biss, Esquire
    (Virginia State Bar No. 32972)
    300 West Main Street, Suite 102
    Charlottesville, Virginia 22903
    Telephone:   (804) 501-8272
    Facsimile:   (202) 318-4098
    Email: stevenbiss@earthlink.net

*Counsel for the Plaintiff*