# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| SELAMAWIT TIKA, | |
| *Plaintiff*, | Case No.: 3:21-cv-00030 |
| v. | MEMORANDUM OPINION & ORDER |
| JONATHAN JACK, | |
| *Defendant*. | Judge Norman K. Moon |

  The plaintiff and defendant dated for two months. When their relationship deteriorated, the defendant allegedly began sending the plaintiff abusive text messages. Then, when in her telling, the plaintiff blocked his phone, the defendant sent the plaintiff's employer—a D.C. government agency—emails saying that the plaintiff had been using her work phone to harass him, trespassed on his property, and had made him and his daughter fear for their lives. The defendant also forwarded the plaintiff's employer numerous private text messages she and the defendant had exchanged. The plaintiff now fears that her employment has been put in jeopardy and alleges that she has suffered significant emotional distress at having such lies about her told to her employer. She subsequently filed a complaint against the defendant for defamation and related claims, and for theft of her property.

  This case is before the Court on a motion to dismiss, and so the Court must accept the truth of plaintiff's version of events. The Court concludes that she has stated a plausible claim of defamation under D.C. law and a claim of insulting words under Virginia law. Those counts and

1

the conversion claim will proceed. The plaintiff's false light and intrusion upon seclusion claims are legally insufficient and will be dismissed.

Background

As set forth in Plaintiff's complaint, Plaintiff lives in Maryland and works at a District of Columbia governmental agency.[1] Dkt. 1. ("Compl.") ¶ 6. Defendant lives and works in Virginia in the Charlottesville area. *Id.* ¶ 7. They dated for two months—from May until July 2021—when their relationship abruptly soured. *Id.* ¶¶ 8–12.

On July 8, 2021, Plaintiff asked Defendant to "refrain from talking about politics and race in front of her children," and "suggested … he needed to work on improving his relationship[s] with people." *Id.* ¶ 9. Plaintiff asserts that her "comments caused [him] to unravel emotionally." *Id.* Plaintiff alleges that, after that incident Defendant sent her "numerous text messages and direct messages through WhatsApp that were insulting, vulgar, vile and nasty." *Id.* ¶ 10. For example, he sent 26 messages to Plaintiff on July 8, in which he stated, among other things: "I can't wait for your daughters to get impregnated by a teenager," and he called Plaintiff "third world trash," a "C*nt," "Dumb Bitch," and an "insect." *Id.* After sending the messages, he apparently would block Plaintiff's number, then unblock it to send more messages; Plaintiff, for her part, "used three of her personal numbers to message [Defendant] back." *Id.*

On July 9, Plaintiff traveled to Defendant's home in the Charlottesville area to, she alleges, "try to make peace, and to retrieve her personal belongings." *Id.* ¶ 11. Plaintiff rang the doorbell once. *Id.* Defendant refused to return Plaintiff's belongings and she "left the area within minutes of arriving without incident of any kind." *Id.*

---

[1] As this case is before the Court on a motion to dismiss, the Court must take the facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

On July 10, Plaintiff sent Defendant a message via WhatsApp with an attached review from an Airbnb host that complained about Defendant's behavior to the host. *Id.* ¶ 12. Plaintiff told Defendant that she would not text him again and blocked his number from her accounts. *Id.* Defendant later responded: "cease and desist – stop texting me." *Id.* ¶ 13. Plaintiff didn't respond. *Id.*

That evening Defendant sent an email to Plaintiff's employer, copying Plaintiff. The email has as its subject, "Harassment of Taxpayer – Selamawit Tika," and that stated in the body of the email: "One of your employees, Selamawit Tika, used her DC government procured cell phone to send me harassing messages. I've asked her repeatedly to cease and desist, however, she has not. Is this type of behavior acceptable from an employe[e] within your office?" Compl. ¶ 14. Plaintiff alleges that this email was "materially false," because Plaintiff did not "harass" Defendant, nor send him "harassing messages," nor used her DC Government cell phone to send any type of harassing message to Defendant. *Id.* ¶ 15. Plaintiff believes that Defendant's message to her employer was "intended to imply that [Plaintiff] was stalking him and to insinuate that [she] was not fit to work" at her office. *Id.* Plaintiff responded to her employer (copying Defendant), asking that Defendant's message be disregarded as a personal matter that she would deal with "in court." *Id.* ¶ 16. Plaintiff also "reassured her employer that the information was false." *Id.*

On July 11, Plaintiff boarded a flight to Ethiopia—a long-planned vacation to see her family. *Id.* ¶¶ 18–20. That day Defendant sent Plaintiff's employer another email with "more false accusations" and screenshots of their private communications. *Id.* ¶18. The email read:

> I want nothing to do wit[h] this person, Selamawit Tika. All I want is for her to STOP harassing me.
>
> I have explained to her multiple times to leave me alone.

3

> On 7/9/21 she drove to my home in Charlottesville, VA, from Hyattsville, MD with zero warning and completely uninvited.
>
> She rang my doorbell multiple times, even though I have a 'NO TRESPASSING' sign at the beginning of my property.
>
> Her vehicle blocked my driveway.
>
> I was unable to pick up my Daughter from school on time that day because of this unhinged behavior.
>
> Selamawit Tika has used FOUR total numbers to harass me. I've included screenshots.
>
> One in particular in which Ms. Selamawit Tika stated: 'Lol. You know you can generate as many numbers as you want right?! And delete after pass [sic] your messages across. So you're holding onto some online one time numbers in your block list hehe. So blocking is really nothing'.
>
> This last message was the final straw and the reason I felt forced to contact you. At this point I fear not only my safety but for my Daughter's safety.
> Please advise and thank you.

*Id.* ¶ 18.

Plaintiff alleges that this email's statements that she trespassed on Defendant's property or engaged in "unhinged" behavior while there were false. *Id.* Plaintiff also alleges that Defendant does not live with his daughter and that she was not there when Plaintiff visited Defendant's house. *Id.*

Defendant attached screenshots of some of his private conversations with Plaintiff, in his email to Plaintiff's employer. *Id.* ¶ 19. Plaintiff alleges that Defendant sent these to portray her "in a false light" to her employer. *Id.* One message stated, "I hate I spent [sic] too much on lingerie lol I'll use them in the future haha." *Id.* It further stated, "Do you know those girls from porn sites the pictures I saw don't look like they'll understand and match your complex behavior and needs. Yeah they look smart baby. One is 24. You like '3rd world[ ] trash' haha. Go for it.

And who takes pictures of themselves FaceTiming with prostitutes." *Id.* Another stated, "Next time she visited I put on a mattress cover." *Id.* Plaintiff alleges that in these private messages, the references to "lingerie" and "porn sites" were only "refer[ing] to pictures and video that [Defendant] had sent [Plaintiff]." *Id.* However, given Defendant's inclusion of only certain portions of their text messages, Plaintiff alleges that they gave the appearance to her employer that "she has no boundaries, that she lacks good judgment, that she is sexually promiscuous, morally and ethically compromised, and mentally unstable." *Id.*

Plaintiff saw Defendant's second message to her employer while she was aboard the flight to Ethiopia. *Id.* ¶ 20. She "cried uncontrollably on the plane," and she was "anxious and fearful about how [Defendant's] email would be received by her employer." *Id.* Plaintiff alleges she was unable to see her family for a few days on account of Defendant's emails; that she now wakes up with panic attacks in the middle of the night; and that she is fearful of losing her job. She alleges that her vacation suffered greatly. *Id.*

Plaintiff filed suit against Defendant in this Court. Dkt. 1. In her complaint, Plaintiff brought five claims against Defendant: (1) "False Light Invasion of Privacy," *id.* ¶¶ 21 – 25, (2) "Intrusion upon Seclusion," *id.* ¶¶ 26–29, (3) "Defamation," *id.* ¶¶ 30–36, and (4) "Insulting Words," in violation of Va. Code § 8.01-45, Compl. ¶¶ 37–40, and finally (5) "Conversion," *id.* ¶¶ 41–46. Defendant filed a motion to dismiss counts one through four. Dkt. 6–7. Thus, Defendant has sought dismissal of all claims but Plaintiff's claim for conversion. Dkt. 7. The motion has been fully briefed, Dkts. 9, 12, and no party requested oral argument. Accordingly, the motion to dismiss is ripe for decision.

Standard of Review

"A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint." *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019). It does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "This pleading standard does not require detailed factual allegations." *ACA Fin. Guar. Corp.*, 917 F.3d at 211 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, "[t]o meet the Rule 8 standard and 'survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *Nadendla v. WakeMed*, 24 F.4d 299, 305 (4th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *King*, 825 F.3d at 212. However, the Court need not "accept the legal conclusions drawn from the facts," or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United. Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotes omitted).

Choice of Law

At the outset, the parties have raised an issue of choice of law, which concerns Count One ("False Light Invasion of Privacy"), Count Two ("Intrusion Upon Seclusion") and Count Three ("Defamation"). *See* Dkt. 9 at 3–4; Dkt. 12 at 1–2. The Court will address the applicable law for Plaintiff's defamation claim first, before turning to the other two claims.

As a federal court sitting in diversity jurisdiction, the Court borrows the forum State's choice-law-law rule. *Cassirer v. Thyssen-Bornemisza Collection Found.*, 142 S. Ct. 1502, 1509 (2022) (citing *Klaxon Co. v. Stentor Elec. Mfr. Co.*, 313 U.S. 487, 496 (1941)). Thus, this Court applies Virginia's choice of law rules. Virginia's choice-of-law rule is well established that "it is the place of the wrong (*lex loci delicti*) that determines which State's substantive law applies to a tort action brought in Virginia." *Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986) (citing *McMillan v. McMillan*, 253 S.E.2d 662 (Va. 1979)); *Jones v. R.S. Jones & Assocs., Inc.*, 431 S.E.2d 3, 5 (Va. 1993) (same). For defamation or libel cases, Virginia courts apply the substantive law of the state where the defamatory statements were published. *Lapkoff v. Wilks*, 969 F.2d 78, 81 (4th Cir. 1992) (applying Virginia law); *Gilmore v. Jones*, 370 F. Supp. 3d 630, 664 (W.D. Va. 2019) (citing *ABLV Bank v. Ctr. for Advanced Def. Studies Inc.*, No. 1:14-cv-1118, 2015 WL 12517012, at *1 (E.D. Va. Apr. 21, 2015)). This Court will further follow the precedent in this district that, where a defamation claim is based on email or similar means of correspondence, the "place of the wrong" is the place of "publication," which is "the location the email is opened and read." *Meadows v. Northrop Grumman Innovation Sys., Inc.*, 436 F. Supp. 3d 879, 887 (W.D. Va. 2020) (citing *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 503 (W.D. Va. 2019)).

While Plaintiff has not explicitly pleaded where her boss opened the emails from Defendant, the Court concludes, based on the allegations in the Complaint, that it is certainly plausible and indeed probable that Defendant's emails to Plaintiff's employer were opened in Washington, D.C. Plaintiff works for the D.C. Health Benefit Exchange Authority (the "HBE"), and manages numerous employees. Compl. ¶ 6. Defendant sent the allegedly defamatory emails to Plaintiff's boss, and further asked that the email be forwarded to the Executive Director of the

7

agency. *Id.* ¶¶ 14, 18. Moreover, the Court notes that Plaintiff has argued that D.C. law governs her defamation claims pursuant to these choice-of-law principles, and that Defendant has not contested that D.C. law applies to Plaintiff's defamation claim. Indeed, Defendant acknowledged that Plaintiff is "likely correct" that "Virginia's choice of law rules dictate that D.C. law applies" to her defamation claim because, "to the extent that there was any publication of the two emails, the publication occurred in the District of Columbia in the Office of Teka's employer." Dkt. 12 at 1. Accordingly, at this time the Court will apply relevant D.C. law to govern Plaintiff's defamation claim in Count Three. *See Edwards*, 378 F. Supp. 3d at 502–03 (applying law of place email was probably read to govern defamation claim).

Defendant writes that it is "less clear where the alleged invasion of [Plaintiff's] privacy might have occurred," and therefore, which state's law should apply to govern Plaintiff's false light and intrusion upon seclusion claims. Dkt. 12 at 1-2. At this stage of the case and in view of the parties' briefing, the issue need not detain the Court long. Plaintiff's false light and intrusion upon seclusion claims are based upon the same factual predicate as Plaintiff's defamation claim—namely, that Defendant invaded Plaintiff's privacy and harmed her reputation by emailing Plaintiff's employer the alleged false statements concerning Plaintiff and accompanying screenshots of private text messages between them. *See* Compl. ¶¶ 22, 27. The Court also notes that Defendant has not attempted to argue why under Virginia conflicts of laws principles, any other law besides D.C.'s law would apply to these claims. *See* Dkt. 12 at 1–2. The Court will therefore assume that D.C. law applies to these claims, as Plaintiff argues. Accordingly, the

8

Court will proceed to analyze the plausibility of Plaintiff's defamation, false light and intrusion upon seclusion claims under D.C. law.[2]

### Defamation

Defendant first challenges Plaintiff's claim for defamation. Dkt. 7 at 4–9; Dkt. 12 at 4–6. To state a claim for defamation under D.C. law, a plaintiff must allege "(1) that he was the subject of a false and defamatory statement; (2) that the statement was published to a third party; (3) that publishing the statement was at least negligent; and (4) that the plaintiff suffered either actual or legal harm." *Farah v. Esquire Magazine*, 736 F.3d 528, 533–34 (D.C. Cir. 2013) (citation omitted).

"An actionable statement must be false and defamatory." *US Dominion, Inc. v. Byrne*, No. 1:21-cv-2131, 2022 WL 1165935, at *3 (D.D.C. Apr. 20, 2022) (citing *Rosen v. Am. Israel Pub. Affairs Comm., Inc.*, 41 A.3d 1250, 1256 (D.C. 2012)). A statement is defamatory if it "tends to injure the plaintiff in his trade, profession or community standing, or lower him in the estimation of the community," and it "must be more than unpleasant or offensive; the language must make the plaintiff appear odious, infamous, or ridiculous." *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1241 (D.C. 2016) (citations omitted). For a statement to be actionable as defamatory, "it must at least express or imply a verifiably false fact about the plaintiff." *US Dominion, Inc. v. Powell*, 554 F. Supp. 3d 42, 57 (D.D.C. 2021) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19–20 (1990)). Therefore, "statements of opinion can be actionable if they imply a provably false fact, or rely upon stated facts that are provably false," and thus have "an explicit or implicit factual foundation and is therefore objectively verifiable." *Rosen*, 41 A.3d

---

[2] Neither party has argued that anything other than Virginia law applies to Plaintiff's insulting words claim, specifically brought pursuant to Va. Code § 8.01-45. Accordingly, the Court will apply Virginia law to that claim.

at 1256 (quoting *Guilford Transp. Indus. v. Wilner*, 760 A.2d 580, 597 (D.C. 2000) (internal quotation marks and citation omitted)). However, "if it is plain that a speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Rosen*, 41 A.3d at 1256 (quoting *Guilford Transp. Indus.*, 760 A.3d at 597)).

First, Defendant argues that the emails he sent to Plaintiff's employer did not include false statements, or, in any event, Defendant believed them to be true—like his statement that Plaintiff had been using her government cell phone to send harassing messages. Dkt. 7 at 5–6; Dkt. 12 at 5. Defendant argues that the statements he made in the two emails he sent to Plaintiff's employer were not false, as required to support a defamation claim. Dkt. 12 at 5; Dkt. 7 at 5–6. However, on a motion to dismiss, the Court "must assume, as the complaint alleges, the falsity of any express or implied factual statements," and further, the Court "must also assume that such statements were made by [Defendant] with knowledge of their falsity or reckless disregard for their truth." *See Klayman v. Segal*, 783 A.2d 607, 613 (D.C. 2001) (quoting *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 623 (D.C. Cir. 2001)); *see also Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) ("We assume the truth of all well-pleaded factual allegations and construe reasonable inference from those allegations in a plaintiff's favor."). Accordingly, the Court must accept the veracity of the allegations in the complaint that, contrary to Defendant's statements in his emails, Plaintiff did not "harass" Defendant or do so using a government cell phone, nor did she trespass on Defendant's property. Compl. ¶¶ 14–15, 18.

Defendant further contends that the allegations in the complaint and Plaintiff's admissions demonstrate that the messages he sent were "substantially true," and that at best there were "[s]light inaccuracies" in his email to Plaintiff's employer. Dkt. 7 at 5–6 & n. 1. Defendant

notes, for instance, that Plaintiff admitted calling or texting Defendant multiple times, including once with her government cell phone, and argues that he "could very well have viewed that behavior as harassment." *Id.* at 6. To be sure, D.C. law "recognize[s] 'substantial truth' as a defense to defamation." *Armstrong v. Thompson*, 80 A.3d 177, 183 (D.C. 2013). As such, the Court must "discount minor discrepancies, so long as the substance, the gist, the sting, of the libelous charge be justified." *Id.* at 183–84 (quoting *Moldea v. New York Times Co.*, 22 F.3d 310, 318 (D.C. Cir. 1994)) (internal quotation marks omitted). But, accepting the truth of Plaintiff's factual allegations on this motion to dismiss, Plaintiff nonetheless expressly alleged that she did not "use[ ] her DC government procured cell phone to send [Defendant] harassing messages." Compl. ¶ 14. Moreover, Defendant's contrary statement to Plaintiff's employer that Plaintiff used her government cell phone to send him harassing messages is not made "substantially true" by Plaintiff's admission that she sent "one" innocuous text message to him that her "personal phone had crashed and she would not be able to text him that moment." *Id.* ¶ 15. Nor does Plaintiff's admission that she went to Defendant's home to gather her belongings, Compl. ¶ 11, render it "substantially true" that, as Defendant conveyed, Plaintiff was "trespassing" on his property, *id.* ¶ 18. At this stage of the case and accepting the truth of Plaintiff's allegations in her complaint and drawing all reasonable inferences in her favor—as this Court must—Defendant has not shown the "substantial truth" of his statements such as would defeat the defamation claim as a matter of law.

Trying another tack, Defendant argues that statements at issue in his emails were nothing more than "statement[s] of opinion." Dkt. 7 at 6–8. Defendant specifically contends that the heading of his first email, "Harassment of Taxpayer," was "a constitutionally protected

11

expression of opinion." *Id.* at 6.[3] Whether an alleged defamatory statement is a question of fact or opinion is a question of law for the Court to decide. *Moldea v. New York Times Co.*, 15 F.3d 1137, 1142 (D.C. Cir. 1994) (citations omitted). The Court need not decide whether the subject line of the email, "Harassment of Taxpayer," standing alone, constituted protected opinion because the issue "[w]hether a defamatory statement of opinion is actionable often depends on the context of the statement in question." *Mann*, 150 A.3d at 1241 (citation omitted). "[A] statement is actionable if viewed in context it 'was capable of bearing a defamatory meaning and … contained or implied provably false statements of fact.'" *Id.* at 1242 (quoting *Guilford Transp. Indus.*, 760 A.2d at 597); *see also Close It! Title Servs., Inc. v. Nadel*, 248 A.3d 132, 139 (D.C. 2021) ("When examining a defamation claim, we cannot separate the words from their context."). The heading "Harassment of Taxpayer" in the subject line of Defendant's first email is reasonably read in conjunction with the body of the email which states that Plaintiff "used her DC government procured cell phone to send me harassing messages," and that Defendant had "asked her repeatedly to cease and desist, however, she has not." Compl. ¶ 14. Moreover, in Defendant's second email he added further factual content to his use of the term "harassment," *id.* ¶ 18 ("All I want is her to STOP harassing me."), including by conveying that Plaintiff had trespassed on his property, *id.* ¶ 18. Thus, the alleged defamatory statement in context contained or implied provably false statements of fact, which added factual content to Defendant's allegation that Plaintiff had "harassed" him—taking those statements out of the realm of an unactionable opinion.

---

[3] Defendant initially argued this issue in more detail in his opening memorandum, citing Virginia law. The relevant law on this point does not appear to be materially different between Virginia and D.C. law, and the Court notes Defendant's concession in his reply that D.C. law is likely applicable.

Defendant further argues that the statements in his emails "do not rise to the level of defamatory words," as none of them make Plaintiff appear "odious, infamous, contemptible, or ridiculous," and "[e]ven taken together, the statements do not have that impact." Dkt. 7 at 8. The Court disagrees with Defendant. Under D.C. law, "[a] statement is defamatory if it tends to injure plaintiff in his trade, profession or community standing, or lower him in the estimation of the community," however, the language "must be more than unpleasant or offensive; the language must make the plaintiff appear odious, infamous, or ridiculous." *Weyrich*, 235 F.3d at 627 (internal quotation marks and citations omitted). Moreover, as relevant here, "a statement constitutes defamation per se when it 'imput[es] to a person a … matter affecting adversely a person's fitness for trade, business, or profession[.]" *Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257, 273 (D.D.C. 2017) (quoting *Carey v. Piphus*, 435 U.S. 247, 262 n.18 (1978)). If the statements appear to be "at least capable of a defamatory meaning, whether they were defamatory and false are questions of fact to be resolved by the jury." *Moss v. Stockard*, 580 A.2d 1011, 1023 (D.C. 1990).

On a motion to dismiss and accepting Plaintiff's allegations as true and drawing all reasonable inferences in her favor, the Court concludes that Defendant's statements to Plaintiff's employer, specifically those saying Plaintiff misused Government property (her phone) to send him "harassing messages" and conveying that she had "trespassed" on his property, were capable of a defamatory meaning. *See Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 878 (D.C. 1998) (holding that even allegation that an attorney is out of an office during normal working hours, in context, could be a defamatory reflection on professional performance; and that inactivating plaintiff's access key and thus locking her out of her office was a "non-verbal representation … that she has done something disgraceful," that "cannot fairly be characterized

13

as non-defamatory as a matter of law"). Plaintiff has stated a plausible claim for defamation *per se*, as Defendant's statements including those that Plaintiff misused government property (her cell phone) to harass him, call into question Plaintiff's fitness for her position,[4] and therefore she needn't have pleaded general damages, *see United States ex rel. Guo v. Nat'l Endowment for Democracy*, No. 1:18-cv-1986, 2022 WL 503765, at *13 (D.D.C. Feb. 18, 2022). Indeed, Defendant himself suggested to Plaintiff's employer he thought such behavior rendered her unfit to work in the office—"Is this type of behavior deemed acceptable from an employe[e] within your office? Please advise." Compl. ¶ 14. Defendant's attempt to explain away that language to Plaintiff's employer as merely "focus[ing]" on "*acceptable behavior* … not *fitness* for the job," Dkt. 12 at 5–6 (emphases added), is unpersuasive. Accordingly, the Court will deny Defendant's motion to dismiss Plaintiff's defamation claim.

## False Light

A plaintiff pleading a claim of false light under D.C. law must allege "(1) publicity (2) about a false statement, representation, or imputation (3) understood to be of and concerning the plaintiff and (4) which places the plaintiff in a false light that would be offensive to a reasonable person." *Kitt v. Capital Concerts, Inc.*, 742 A.2d 856, 859 (D.C. 1999) (citation omitted).

As to the first element, publicity requires that "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded

---

[4] *See MiMedx Grp., Inc. v. DBW Partners LLC*, No. 17-cv-1925, 2018 WL 4681005, at *3 (D.D.C. Sept. 28, 2018) ("Defamatory statements relating to a plaintiff's 'fitness for the proper conduct of his lawful business, trade or profession' generally constitute defamation per se." (citing Restatement (Second) of Torts § 573 (Am. Law Inst. 1977)); *accord Lawler v. Miratek Corp.*, No. 09-cv-252, 2010 WL 2838359, at *4 (W.D. Tex. July 16, 2010) (holding that "statements accusing [the plaintiff] of misuse of government employees and property, falsifying employment time sheets, nepotism, [and] having a sexual relationship with a Contract Officer Representative," which "sounded in theft and sexual impropriety, are defamatory on their face").

14

as *substantially certain to become one of public knowledge.*" *Bean v. Gutierrez*, 980 A.2d 1090, 1095 (D.C. 2009) (quoting originally Restatement (Second) of Torts § 652D cmt. a (1977)). Therefore, "*it is not an invasion of the right of privacy … to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons*," though publication in a newspaper, magazine, radio or other broadcast or statement to a "large audience" would qualify. *See Bean*, 980 A.2d at 1095 (quoting Restatement (Second) of Torts § 652D cmt. a) (emphasis added).

Plaintiff alleges that Defendant sent the allegedly tortious emails to her boss and asked that her boss forward them her own boss, HBE's Executive Director. *See* Compl. ¶¶ 14–19. That is insufficient circulation to constitute the publicity required to state a claim for false light. *See Bean*, 980 A.2d at 1095–96 (holding that the defendant's providing information, "gossip, really," about the plaintiff "to a single person in a private communication" did not constitute the "publicity" required to state a false light claim); *Armstrong v. Thompson*, 80 A.3d 177, 188–89 (D.C. 2013) (holding that the defendant's "mailing a handful of letters to a handful of employees at a single agency" was insufficient, and a "much broader dissemination" would be required to satisfy the "publicity" requirement for a false light claim). Accordingly, the Court will dismiss Count One—Plaintiff's false light claim.

### Intrusion Upon Seclusion

Plaintiff's second claim is for intrusion upon seclusion under D.C. law. Compl. ¶¶ 26–28. "The tort of intrusion upon seclusion has three elements: (1) an invasion or interference by physical intrusion, by use of a defendant's sense of sight or hearing, or by use of some other form of investigation or examination," "(2) into a place where the plaintiff has secluded himself, or into his private or secret concerns," and "(3) that would be highly offensive to an ordinary,

15

reasonable person." *Wolf v. Regardie*, 553 A.2d 1213, 1217 (D.C. 1989). Contrary to Defendant's argument, *see* Dkt. 12 at 4, "intrusion does not require as an essential element the publication of the information obtained," and so is "[u]nlike some other types of invasion of privacy," *Wolf*, 553 A.2d at 1217.

The first element of intrusion upon seclusion ("invasion or interference by physical intrusion"), include circumstances such as "harassment," "peeping through windows or into other locations in which a plaintiff has chosen to seclude himself," "opening personal mail," "eavesdropping on private conversations," "entering a plaintiff's home without permission or searching his or her belongings," "examining a plaintiff's private bank account," "or other invasions of that nature." *Id.* at 1218. Plaintiff's complaint fails to allege that Defendant committed any such "invasion or interference by physical intrusion." While Plaintiff's text messages with Defendant were private and intended for him only (and certainly not intended to be forwarded to her boss, without her permission), these were nonetheless communications she had voluntarily with Defendant at the time. *See* Compl. ¶¶ 18–19. Defendant's conduct is simply not akin to those types of conduct prohibited by this tort. *See, e.g.*, *Kennedy v. Berkel & Co. Contractors*, No. 17-cv-1248, 2020 WL 4903896, at *8 (D.D.C. Aug. 20, 2020) (dismissing intrusion upon seclusion claim for failure to satisfy the "invasion or interference by physical intrusion" element, notwithstanding plaintiff's coworker's highly inappropriate phone call, because the plaintiff had originally given her coworker her phone number "for work-related calls," and there was "no evidence [he] conducted an 'investigation or examination' to retrieve her phone number"); *cf. Wolf*, 553 A.2d at 1218 ("Finally, appellant's phone conversation with a *Regardie's* reporter, a colloquy in which he voluntarily participated, could hardly be considered intrusive.").

Plaintiff argues in support of her intrusion upon seclusion claim that under D.C. law. a plaintiff "can recover on a claim of publication of private facts." Dkt. 9 at 6. That is true. However, that is a distinct invasion-of-privacy claim from "intrusion upon seclusion," which she has alleged. As the D.C. Court of Appeals has explained, "Invasion of privacy is not one tort, but a complex of four, each with distinct elements and each describing a separate interest capable of being invaded." *Wolf*, 553 A.2d at 1216–17. Those four "constituent torts" are "(1) intrusion upon one's solicitude or seclusion; (2) public disclosure of private facts; (3) publicity that places one in a false light in the public eye; and (4) appropriating one's name or likeness for another's benefit." *Id.* A "public disclosure of private facts" claim would fail for the same reasons that Plaintiff's false light claim failed: Plaintiff's inability to satisfy the "publicity" requirement, which is the same for both torts. *See Armstrong*, 80 A.3d at 189 (explaining that "the 'publicity' requirement for a publication of private facts claim is the same for all invasion of privacy torts"). The Court will therefore dismiss Count Two, Plaintiff's intrusion upon seclusion claim (even if recast as a publication of private facts claim).

<u>Insulting Words</u>

Finally, Plaintiff sued Defendant for "insulting words" under Virginia law. Compl. ¶¶ 37–40. Virginia Code § 8.01-45 states that: "All words shall be actionable which from their usual construction and common acceptance are construed as insults and tend to violence and breach of the peace." Plaintiff alleges that Defendant's "insulting words, in the context and under the circumstances in which they were published, written and used, tend to violence and breach of the peace," and, that Plaintiff reasonably "was humiliated, disgusted, angered and provoked to violence by the insulting words." Compl. ¶ 38.

Claims under § 8.01-45 "ha[ve] been interpreted by Virginia courts to be virtually co-extensive with the common law action for defamation." *Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1284 (4th Cir. 1987). To state a claim under the statute, "a plaintiff must plead words that (1) would be construed as insults and (2) tend to violence and breach of the peace." *Waddle v. Claughton*, No. 4:18-cv-10, 2019 WL 1049388, at *5 (W.D. Va. Mar. 5, 2019) (quoting *Goulmamine v. CVS Pharm., Inc.*, 138 F. Supp. 3d 652, 668 (E.D. Va. 2015) (internal citations omitted)). "Whether words are insulting and tend to violence is determined by the usual construction of the words and their common acceptance in the community." *Goulmamine*, 138 F. Supp. 3d at 668. Generally, whether words are insulting is a question of fact for a jury to decide; but a court may find as a matter of law that no reasonable jury would find words insulting. *Id.* at 669. In any event, "even in instances where words are 'disgusting, abuse, [and] repulsive,' they cannot always be understood to convey a false representation of fact as the insulting words statute requires." *Carter v. Dominion Energy, Inc.*, 529 F. Supp. 3d 525, 547 (W.D. Va. 2021) (quoting *Crawford v. United Steelworkers, AFL-CIO*, 335 S.E.2d 828, 839 (Va. 1985)).

Plaintiff does not specifically identify which language Defendant uttered or wrote supports her claim for violation of Va. Code § 8.01-45. Compl. ¶¶ 37–40; Dkt. 9 at 14–15. They could include text messages Defendant sent Plaintiff, Compl. ¶ 10, and the emails Defendant sent Plaintiff's employer, *id.* ¶¶ 14, 18. Defendant seeks dismissal of the claim, arguing that the "insulting words statute only penalizes words used in a verbal attack made in a face-to-face confrontation that presents a clear and present danger of a violent physical response. No such tendency to incite violence is either specifically plead[ed] or suggested by the facts plead[ed] in this Complaint." Dkt. 7 at 11. Plaintiff responded that, "[c]ontrary to Defendant's suggestion, the

insulting words do not have to have been uttered in a 'face-to-face' confrontation." Dkt. 9 at 14 (citing cases). Defendant offered no further argument in support of dismissal of this count in his reply, solely incorporating prior argument. Dkt. 12 at 4.

The Court thus must resolve the issue presented by Defendant—whether the insulting words must have been spoken in a *face-to-face confrontation* to support a claim under Va. Code § 8.01-45. The statutory language doesn't say anything about that. Nor has the Supreme Court of Virginia so held. In fact, the Supreme Court of Virginia has explicitly acknowledged written statements may be actionable as insulting words, though the case was not decided on that basis. *Darnell v. Davis*, 58 S.E.2d 68, 70 (Va. 1950). The Court agrees with the weight of authority that "written communications may serve as the basis of an insulting words claim, at least where the words are otherwise insulting and tend to violence." *Goulmamine*, 138 F. Supp. 3d at 668; *see also Waddle v. Claughton*, No. 4:18-cv-10, 2019 WL 1049388, at * (W.D. Va. Mar. 5, 2019) ("there is no requirement that the words must be verbalized in a face-to-face confrontation"); *Trail v. Gen. Dynamics Armament & Tech. Prods., Inc.*, 697 F. Supp. 2d 654, 658–59 (W.D. Va. 2010) (explaining that "requiring that a claim for insulting words include a face-to-face confrontation would constitute an erroneous interpretation of the statute's plain language and Virginia Supreme Court precedent"). Accordingly, at this time, Plaintiff's insulting words count will proceed.

## Conclusion

For these reasons, Defendant's motion to dismiss is **GRANTED in part**, and the Court will accordingly **DISMISS** Plaintiff's false light and intrusion upon seclusion claims. However, Defendant's motion to dismiss will be **DENIED in part** with respect to Plaintiff's defamation and insulting words claims. Dkt. 6.

19

It is so **ORDERED**.

The Clerk of Court is directed to send a certified copy of this Memorandum Opinion and the Order to the parties.

Entered this 26th day of July, 2022.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE